UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLORENC MALAJ,

                Petitioner,                        Civil Action No. 12-11495

          v.                                District Judge Mark A. Goldsmith
                                          Magistrate Judge Laurie J. Michelson

REBECCA ADDUCCI, et al.,

                Respondents.

_____/

## REPORT AND RECOMMENDATION TO GRANT
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Florenc Malaj, a non-citizen, is in a state prison awaiting the completion of his removal proceedings. On March 29, 2012, the Immigration Court in Detroit, Michigan held, in accordance with the Board of Immigration Appeals' decision in *In re Rojas*, 23 I. & N. Dec. 117 (B.I.A. 2001), that Malaj's detention until the completion of removal proceedings was mandatory under the Immigration and Nationality Act § 236(c), 8 U.S.C. § 1226(c). Malaj says that the Board's interpretation of that statutory provision is incorrect, and, under the statute's unambiguous language, he is not subject to mandatory detention. Malaj therefore petitions this Court for a writ of habeas corpus, which, if granted, would require the Immigration Court to hold an individualized detention hearing to determine whether Malaj should be detained until removal proceedings are completed. Malaj's petition has been referred to this Court for a Report and Recommendation. (Dkt. 9.)

For the reasons that follow, the Court RECOMMENDS that the Petition for Habeas Corpus be GRANTED.

## I. BACKGROUND

Malaj, an Albanian citizen, paroled into this country at age nine and later became a lawful permanent resident. (Dkt. 1, Pet. for Habeas ¶¶ 17-20.) In December 2010, at age 17 or 18, Malaj pled guilty to felony home invasion. (*See* Dkt. 6, Resp. to Pet. for Habeas at 2.) As part of his sentence, the state court assigned Malaj youthful trainee status under the Holmes Youthful Trainee Act. (*Id.*) The Act allows a court to assign an individual who has pled guilty to committing certain offenses between ages 17 and 21 the status of youthful trainee; if the individual successfully completes the program, the court dismisses the criminal proceedings without a conviction. *See* Mich. Comp. Laws §§ 762.11, 762.14. In May 2011, Malaj pled guilty to another criminal charge: receiving and concealing property valued at less than $1000. (*Id.*) He was again assigned youthful trainee status. (*Id.*) Although the Michigan courts sentenced Malaj to, among other things, three years' probation, the courts never sentenced him to a term of imprisonment. (*Id.*; *see also* Pet. for Habeas at ¶¶ 21, 22.)

Over a year after Malaj's plea on the theft charge, on March 25, 2012, Immigration and Customs Enforcement arrested Malaj. Malaj was charged as removable as an alien "convicted of two or more crimes involving moral turpitude[] not arising out of a single scheme of criminal misconduct," 8 U.S.C. § 1227(a)(2)(A)(ii). (Pet. for Habeas at ¶ 23; Resp. to Pet. for Habeas at 3, Ex. A.) A few days later, the Immigration Court denied bond and held that Malaj's detention pending removal proceedings was "mandatory." (*Id.*, Tab A.) The Immigration Court was bound to make such a finding by the Board of Immigration Appeals' decision in *In re Rojas*, 23 I. & N. Dec. 117 (B.I.A. 2001); there, the Board interpreted 8 U.S.C. § 1226(c) to require mandatory detention pending removal proceedings for aliens who are inadmissible or deportable because they

have committed certain statutory offenses.  Malaj argues that the Board's interpretation of 8 U.S.C. § 1226(c) is incorrect, and, under a proper reading of the statute, mandatory detention applies only to those aliens who are inadmissible or deportable because they have committed certain statutory offenses *and* who the Attorney General takes into custody immediately "when the alien is released" from state custody.  Because Malaj was not taken into custody immediately upon his "release," Malaj maintains that the he is entitled to a detention hearing to determine whether he should remain in custody for the remainder of his removal proceedings.

## II. ANALYSIS

The parties dispute the meaning of 8 U.S.C. § 1226(c).  Paragraph (1) of § 1226(c) specifies which aliens the Attorney General "shall take into custody" "when the alien is released" from state (or other) custody:

> (1) Custody
>
> The Attorney General shall take into custody any alien who--
>> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence1 to a term of imprisonment of at least 1 year, or
>> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> *when the alien is released*, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (emphasis added).  Although § 1226(c)(1) does not mention mandatory detention for any particular alien, paragraph (2) of § 1226(c) provides:

(2) Release

The Attorney General may release *an alien described in paragraph (1)* only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c)(2) (emphasis added). Thus, reading the two paragraphs together, "an alien described in paragraph (1)," who is not necessary for witness protection matters, may not be released pending removal proceedings, i.e., the alien is subject to mandatory detention. The grant or denial of Malaj's petition turns on the two emphasized phases: "when the alien is released," § 1226(c)(1), and "an alien described in paragraph (1)," § 1226(c)(2).[1]

---

[1]Petitioner contends that there is threshold issue. He asserts that his youthful trainee status under the Holmes Youthful Trainee Act is not a "conviction," and, therefore, he falls outside the four categories set forth in § 1226(c)(1). (Dkt. 7, Br. in Supp. of Pet. for Habeas Corpus at 3-8.) This argument appears to be foreclosed by published Sixth Circuit authority. *See Uritsky v. Gonzales*, 399 F.3d 728 (6th Cir. 2005). Therefore, the Court assumes — without deciding — that Petitioner's twice-assigned youthful trainee status makes him subject to removal under 8 U.S.C. § 1227(a)(2)(A)(ii), and, therefore, places him within the deportable category set forth in 8 U.S.C. § 1226(c)(1)(B).

The Court also notes that this is one of the rare cases where the petitioner, although technically convicted of one of the enumerated offenses, was never incarcerated. At least one court has held that, where an alien was convicted of one of the enumerated offenses but was sentenced only to probation, § 1226(c) did not apply. *Javier De La Cruz v. Sabol*, No. 12-0921, 2012 U.S. Dist. LEXIS 94235, at *3 (M.D. Penn. July 9, 2012) ("[B]ecause petitioner was not released from imprisonment at the time he was taken into immigration custody, but, rather, was actively serving a sentence of probation, § 1226(c) does not apply and he is entitled to an individualized bond hearing."). However, there is contrary authority, *see Desrosiers v. Hendricks*, No. 11-4643, 2011 U.S. Dist. LEXIS 154971 (D.N.J. Dec. 30, 2011), and Petitioner here does not argue that he falls outside the scope of § 1226 because he was never imprisoned.

4

Petitioner argues, with the backing of the majority of federal courts that have addressed the issue, that the language "when the alien is released," in addition to the four inadmissible/deportable categories in § 1226(c)(1), acts as a precondition on mandatory detention. And, says Malaj, the precondition must be satisfied *immediately* upon the alien's release from state custody:

> By using the phrase 'when released,' 'Congress demonstrated its intent that such aliens be taken into custody contemporaneously with their release or not at all.' [*Khodr v. Adduci*, 697 F. Supp. 2d 774, 778 (E.D. Mich. 2010).] For those aliens that were not taken into custody immediately upon release, the Attorney General can still detain them under 8 U.S.C. § 1226(a) but it must provide them with an individualized custody hearing.

(Pet. for Habeas ¶ 27.) Because the Attorney General did not take Malaj into custody immediately upon his release from state custody, Malaj argues that he is not "an alien described in paragraph (1)," and, therefore, the mandatory detention set forth in paragraph (2) of § 1226(c) is not applicable to him.

Respondents offer a different reading of § 1226(c). They shift the Court's attention from the phrase "when the alien is released" in § 1226(c)(1) to the phrase "an alien described in paragraph (1)" in § 1226(c)(2). As the Board of Immigration Appeals reasoned in *In re Rojas*, 23 I. & N. Dec. 117 (B.I.A. 2001), Respondents assert that the "alien described in paragraph (1)" is the alien described in subparagraphs (1)(A) to (1)(D). That is, it is Respondents' position that the mandatory detention provision of § 1226(c)(2) applies to any alien who falls within one of the four inadmissble/deportable categories set forth in § 1226(c)(1) notwithstanding the "when the alien is released" clause. (Dkt. 6, Resp. to Pet. for Habeas at 10-11.) Moreover, say Respondents, even if this reading of § 1226(c) is not the only plausible reading, it is at least a plausible reading and, therefore, § 1226(c) is ambiguous. And if it is ambiguous, they say, this Court must defer to their

5

reading because that is also the reading set forth by the Board of Immigration Appeals in *In re Rojas*. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 104 S. Ct. 2778, 2780, 81 L. Ed. 2d 694 (1984).

Under *Chevron*, "if 'Congress has directly spoken to the precise question at issue' in the text of the statute, [the Court] give[s] effect to Congress's answer without regard to any divergent answers offered by the agency or anyone else." *Hadden v. United States*, 661 F.3d 298, 301 (6th Cir. 2011) (quoting *Chevron*, 467 U.S. at 842-43. But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

While the Court does not agree with the Board of Immigration Appeals' interpretation of § 1226(c) as set forth in *In re Rojas*, the Court cannot say that the Board's interpretation is "impermissible." *See Chevron*, 467 U.S. at 843 & n. 11 ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."). Accordingly, Malaj's petition rises or falls on whether § 1226(c) unambiguously provides that the mandatory detention set forth in paragraph (2) applies only to an alien who meets one of the inadmissible/deportable categories of paragraph (1) *and* who the Attorney General takes into custody immediately upon the alien's release from state custody.

The Court employs the "traditional tools of statutory construction" to ascertain whether "Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842-43 & n. 9; *see also Greenbaum v. U.S. E.P.A.*, 370 F.3d 527, 535 (6th Cir. 2004) ("[I]f the apparent statutory ambiguity can be resolved using 'traditional tools of statutory construction,' an agency's

interpretation is not entitled to *Chevron* deference." (quoting *Mid-America Care Found. v. Nat'l Labor Relations Bd.*, 148 F.3d 638, 642 (6th Cir. 1998))).   Accordingly, the Court begins with the words of the statute.  *Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*, 496 U.S. 226, 237 (1990) ("Our immediate task is therefore one of statutory interpretation.  We begin, of course, with the language of the statute."); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) ("The task of resolving the dispute over the meaning of [11 U.S.C. § 506(b)] begins where all such inquiries must begin: with the language of the statute itself.").

In this Court's view, the only natural reading of the phrase "The Attorney General shall take into custody any alien who – [is inadmissible or deportable for any of four reasons], when the alien is released" is that the Attorney General has a statutory duty to take an alien (who falls within one of the four inadmissible/deportable categories of § 1226(c)(1)) into custody immediately upon the alien's release from state (or other) custody.  The word "when" in this sentence unmistakably means "at which time" or "at what time."   *See* Webster's Third International Dictionary 2602 (1993); *Khodr v. Adduci*, 697 F. Supp. 2d 774, 778 (E.D. Mich. 2010) ("The Court is persuaded by Petitioner's arguments and agrees that the phrase 'when the alien is released' clearly and unambiguously requires that the Attorney General take the alien into custody immediately upon the alien's release from criminal custody."); *Waffi v. Loiselle*, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007) *abrogated by Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012) ("The term 'when' includes the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun." (citing The Oxford English Dictionary 209 (2d ed. 1989); The American Heritage Dictionary of the English Language (4th ed. 2000))).  This Court's conclusion that "when the alien is released" unambiguously connotes

immediacy is backed by the "vast majority" of federal courts that have interpreted this language. *Ortiz v. Holder*, No. 2:11CV1146, 2012 WL 893154, at *3 & n.8 (D. Utah Mar. 14, 2012) (collecting cases). This includes the only two district courts in this Circuit to have ruled on this issue. *See Khodr*, 697 F. Supp. 2d at 774-75; *Rosario v. Prindle*, No. 2011-217, 2011 WL 6942560, at *3 (Nov. 28, 2011) *report and recommendation adopted by* 2012 WL 12920 (E.D. Ky. Jan. 4, 2012).

The Court is aware that the Fourth Circuit Court of Appeals recently reached a contrary conclusion. In *Hosh v. Lucero*, the Appellate Court reasoned,

> The meaning of § 1226(c) is not plain to us. To be sure, "when" in § 1226(c) can be read, on one hand, to refer to "action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun." [*Waffi*, 527 F. Supp. 2d at 488.] On the other hand, "when" can also be read to mean the temporally broader "at or during the time that," "while," or "at any or every time that. . . ." Free M e r r i a m – W e b s t e r   D i c t i o n a r y ,   a v a i l a b l e   a t http://www.merriam-webster.com/dictionary/when (last visited April 30, 2012). We must therefore consider the BIA's interpretation [in *In re Rojas*].

680 F.3d 375, 379-80 (4th Cir. 2012) (finding ambiguity in § 1226(c) and giving *Chevron* deference to Board's decision in *In re Rojas*). But it appears to this Court that the third definition of the word "when" provided by the Fourth Circuit in *Hosh* leads to a strained reading of the statute.

The Court has no doubt that "when" may be used quite naturally as "during" or "while." But "when" as used in § 1226(c)(1) must be read with the remainder of the phrase in question: "when the alien is released." And if "when" means "during" or "while," then "release" is only naturally used as a noun, i.e., "during the alien's release" or "while the alien is on release." But this use of the word "release" is implausible for two reasons. First, it is clear that the phrase "when the alien is released" is merely a passive voice construct for the active voice equivalent: "when federal, state,

8

or local authorities release the alien." So rephrased, the term "is released" denotes a singular action, not a period of time. Second, and stronger, is that later in the very statutory phrase in question, the term "is released" reappears in its action sense: "when the alien is released, without regard to whether the alien *is released on* parole, *supervised release*, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1) (emphases added). In this portion of paragraph (1), the period of time is "supervised release" but the action is "is released." This supports the Court's conclusion that the same term "is released" in the phrase "when the alien is released" also refers to an immediate action — not a period of time. For at least these two reasons, the Court finds the ambiguity identified in *Hosh* unpersuasive. *See Terrell v. United States*, 564 F.3d 442, 452 (6th Cir. 2009) ("'Ambiguity is a creature not of definitional possibilities but of statutory context,' *Brown v. Gardner*, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994), even where courts have emphasized dictionary definitions to discern a word's plain meaning, *Appoloni v. United States*, 450 F.3d 185, 199 (6th Cir. 2006).").

Because the meaning of § 1226(c)(1) is plain based on an analysis of the text, the Court declines to invoke other tools of statutory construction in this particular case. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (Rehnquist, J. for four justice plurality) ("The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. . . . Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (citations and internal quotation marks omitted)); *United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history. . . . Indeed, far from clarifying the statute, the legislative history only muddies the waters." (citation omitted)); *Ron Pair Enterprises*,

9

489 U.S. at 241 ("The task of resolving the dispute over the meaning of § 506(b) begins where all such inquiries must begin: with the language of the statute itself. . . . In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." (citation and internal quotation marks omitted)).[2]

Respondents say none of the foregoing undermines their position. Under their interpretation, even if "when the alien is released" unambiguously means "immediately when the alien is released," § 1226(c) nonetheless requires Malaj to be mandatorily detained because "an alien described in paragraph (1)" excludes the "when the alien is released" clause. In Respondents' view — and the view of the majority of the Board of Immigration Appeals in *In re Rojas* — the "alien described in paragraph (1)" refers only to an alien who is inadmissible or removable under subparagraphs (1)(A) to (1)(D).

The Court rejects this argument for two related reasons. First, the plain language of

---

[2]As a general matter, this Court believes it should proceed with caution when placing weight on the varying intents of the members of Congress, a statute's overarching purpose, or the consequences of varying statutory interpretations. *See Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 646-47 (1990) ("[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." (quoting *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987))). For example, in this case, each side can present positions that make the consequences of the other's interpretation unpalatable. Petitioner could say that under Respondents' interpretation, an individual who, while committing offenses as a youth that fall within 8 U.S.C. § 1226(c)(1)(A) to (D), subsequently graduated college, started a family, ran a business, and has been perfectly law abiding during the five years after the state released her from prison, is unjustly escorted to prison and held without a bond hearing once ICE decides that the time is appropriate to remove the individual. On other hand, Respondents could argue that, under Petitioner's interpretation, a violent offender who ICE had no knowledge that the state had released from prison, and who, in the months since release has covertly committed further violent offenses, unjustly eludes mandatory detainment pending removal proceedings when ICE arrests the individual immediately after determining the individual's whereabouts. The Court declines to venture down these paths when the text is plain and resolves the parties' dispute.

paragraph (2) simply does not say what Respondents want it to.  It says "an alien described in paragraph (1)" not "an alien described in subparagraphs (1)(A) to (1)(D)."  The Court believes that "paragraph (1)" simply means "paragraph (1)" — all of it.  *Cf. Saysana v. Gillen*, 590 F.3d 7, 14 (1st Cir. 2009) ("'The "when released" provision immediately follows the list of enumerated offenses, indicating that the former modifies the latter.  Additionally, § 1226(c) provides that the alien shall be detained upon release regardless of whether he is subsequently arrested for the "same offense," reinforcing the notion that the entire clause applies to the list of enumerated offenses immediately preceding it.'" (quoting *Oscar v. Gillen*, 595 F. Supp. 2d 166 (D. Mass. 2009))).  Second, and relatedly, if "an alien described in paragraph (1)" refers to "an alien described in paragraph (1) without regard to when the Attorney General takes the alien into custody," then the language "when the alien is released" clause is surplusage.  *See, e.g.*, *Khodr*, 697 F. Supp. at 779.

Respondents claim that their interpretation does not render the "when the alien is released" clause surplusage because that clause would still "serve[] the purpose of clarifying that immigration authorities should not assume responsibility for aliens before their criminal incarceration has ended but — in conjunction with the remainder of the sentence, 'without regard to whether the alien may be arrested or imprisoned again for the same offense' — need not wait for the completion of non-custodial restraints on liberty."  (Resp. to Pet. for Habeas at 11.)  But nothing suggests — and Respondents' counsel, when directly asked at oral argument, could not make any proffer — that the Attorney General has any authority to take an alien into custody while the alien is in state custody for the commission of state crimes.  Indeed, the statutory provision Respondents cite in support of their "clarifi[cation]" argument  cuts the other way: "Except as provided in section 259(a) of Title 42 and paragraph (2), the Attorney General may not remove an alien who is sentenced to

imprisonment until the alien is released from imprisonment.  Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal."   8 U.S.C. § 1231(a)(4)(A).

Finally, Respondents argue that even if paragraph (1) of § 1226(c) is a command to the Attorney General to immediately take into custody an alien who the state has released, the Attorney General's failure to comply with that statutory mandate does not result in the loss of his right to mandatorily detain an alien who otherwise falls within the scope of paragraph (1).  (Resp. to Pet. for Habeas at 12.)  In support of this argument, Respondents rely on *United States v. Montalvo-Murillo*, 495 U.S. 711 (1990).

In *Montalvo-Murillo*, Drug Enforcement Authority ("DEA") agents took Montalvo-Murillo into custody after discovering about 72 pounds of cocaine in his car.  495 U.S. at 714-15.  The DEA sought to detain Montalvo-Murillo pending criminal proceedings, but, when Montalvo-Murillo appeared for his hearing, the magistrate judge "sua sponte[] ordered a 3-day continuance."  *Id.* at 715.  When the hearing was eventually held, the magistrate released Montalvo-Murillo on bond. *Id.*  The district judge reversed, finding that no "combination of conditions reasonably would assure [his] appearance or the safety of the community."  *Id.* at 716.  Nonetheless, the district court released Montalvo-Murillo because the magistrate judge did not hold a detention hearing at his first appearance in apparent violation of the Bail Reform Act.  *Id.* at 716.  In particular, the Act provided: "The [detention] hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance."  *Id.* at 714 (quoting 18 U.S.C. § 3142(f)(2)).  The Tenth Circuit affirmed but the Supreme Court reversed. *Id.* at 716.  In so doing, the Supreme Court stated — and this appears to be the language

Respondents focus on — "the word 'shall' in the [18 U.S.C. § 3142(f)(2)'s] hearing time requirement does not operate to bar all authority to seek pretrial detention once the time limit has passed. Although the duty is mandatory, the sanction for breach is not loss of all later powers to act." *Id.* at 718.

But the Supreme Court in *Montalvo-Murillo* also reasoned:

> A prompt hearing is necessary, and the time limitations of the Act must be followed with care and precision. *But the Act is silent on the issue of a remedy for violations of its time limits.* Neither the timing requirements nor any other part of the Act can be read to require, or even suggest, that a timing error must result in release of a person who should otherwise be detained. . . .
>
> *Nothing in § 3142(f) indicates that compliance with the first appearance requirement is a precondition to holding the hearing* or that failure to comply with the requirement renders such a hearing a nullity.

*Id.* at 717 (emphases added).

The emphasized language makes all the difference. Here, 8 U.S.C. § 1226 explicitly provides what should happen if the Attorney General does not detain an alien "when the alien is released": the Attorney General may exercise his discretion in detaining the alien after the alien receives an individualized bond hearing. In particular, § 1226(a) provides:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. *Except as provided in subsection (c) of this section and pending such decision*, the Attorney General —
>> (1) may continue to detain the arrested alien; and
>> (2) may release the alien on —
>>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>> (B) conditional parole; but

13

> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a) (emphasis added). Restated, under 8 U.S.C. § 1226, the default rule is set forth in subsection (a); subsection (a), in turn, excepts those who fall within subsection (c). Thus, unlike the statute at issue in *Montalvo-Murillo*, compliance with subsection (c) of § 1226 is a "precondition" on mandatory detention. If it is not met, the default rule of § 1226(a), not some judge-made remedy, applies.[3]

## III. CONCLUSION AND RECOMMENDATION

In sum, the Court believes the language of § 1226 is plain. Paragraph (1) of section (c) provides that "[t]he Attorney General shall take into custody any alien who" is inadmissible or deportable under subparagraphs (1)(A) to (1)(D) "when the alien is released" from state custody. 8 U.S.C. § 1226(c)(1). Because the Attorney General did not take Malaj into custody immediately when the state released him from its custody, Malaj is not "an alien described in paragraph (1)." 8 U.S.C. § 1226(c)(2). He is therefore not subject to the mandatory detention contemplated in paragraph (2) and does not fall within the exception of 8 U.S.C. § 1226(a). Under 8 U.S.C. § 1226(a) Malaj is entitled to an individualized bond hearing.

The Court RECOMMENDS that Malaj's Petition for a Writ of Habeas Corpus be GRANTED and that the Immigration Court provide Malaj with an individualized detention hearing within 14 days of adoption of this Report and Recommendation. It is further recommended that if

---

[3]Other courts have also found *Montalvo-Murillo* distinguishable from the issue of mandatory detention under § 1226. *See Kot v. Elwood*, No. 12-1720, 2012 WL 1565438, at *8 (D.N.J. May 2, 2012); *Valdez v. Terry*, No. 11-0897, 2012 WL 2829438, at *4 (D.N.M. Apr. 18, 2012).

Malaj is not afforded a hearing within that time frame, Respondents must release Malaj from their custody.

## IV. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated: August 6, 2012

15

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 6, 2012.

s/Jane Johnson
Deputy Clerk